IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN A. B., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )  Case No. 24-CV-055-MTS |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

**<u>OPINION AND ORDER</u>**

Plaintiff John A. B. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

**Social Security Law and Standard of Review**

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant—taking into account his age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc.*

*Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). However, a court may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On January 5, 2022, Plaintiff filed an application for Title XVI supplemental security income, 42 U.S.C. §§ 1381, *et seq.*, under the SSA. (R. 21, 67, 74). He alleged an inability to work beginning on December 1, 2005, due to limitations resulting from type 2 bipolar disorder, anxiety, depression, attention deficit disorder or attention deficit/hyperactivity disorder ("ADHD"), heart attacks, trigger finger, carpal tunnel in right hand, and numbness in left hand. (R. 21, 218). Plaintiff was fifty years old at the time of the ALJ's decision. (R. 32, 34). He has at least a high school education and no past relevant work. (R. 32).

Plaintiff's application was denied both initially and upon reconsideration. (R. 67–82). At Plaintiff's request, ALJ Dennis LeBlanc conducted an administrative hearing on March 27, 2023. (R. 41–66). The hearing was held via teleconference pursuant to COVID-19 procedures. (R. 21,

117–18, 183–85). ALJ LeBlanc issued a decision on July 26, 2023, denying benefits and finding Plaintiff not disabled. (R. 18–40). Plaintiff sought review by the Appeals Council, which was denied on December 7, 2023. (R. 5–17). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since January 5, 2022. (R. 24). At step two, he found Plaintiff suffered from the severe impairments of coronary artery disease, obesity, degenerative disc disease, osteoarthritis to the bilateral hands, carpal tunnel syndrome to the bilateral hands, generalized anxiety disorder, depression, bipolar disorder, ADHD, and autism. *Id*. The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. *Id*. Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except he is able to frequently handle and finger. The claimant can understand, remember, and carry out simple instructions. The claimant is unable to communicate with or directly interact with the general public.

(R. 26).

At step four, the ALJ determined Plaintiff had no past relevant work. (R. 32). Based on the testimony of a vocational expert, the ALJ concluded at step five that Plaintiff could perform the representative jobs of cleaner/housekeeper, marker, and collator operator, all of which he found existed in significant numbers in the national economy. (R. 33). As a result, the ALJ found Plaintiff had not been under a disability since January 5, 2022, through the date the application was filed. (R. 34).

**Errors Alleged for Review**

Plaintiff asserts one main error for review in his challenge to the Commissioner's denial of benefits. (Docket No. 12 at 4). Plaintiff argues that "[t]he ALJ failed to provide an adequate narrative in support of his assessed mental RFC and cherrypicked [Plaintiff's] mental abilities during individual visits rather than assess [Plaintiff's] longitudinal mental functioning." *Id.* at 4–14. Defendant maintains that the ALJ's decision is supported by substantial evidence and that Plaintiff asks the Court to reweigh the evidence, which it cannot do. (Docket No. 17). For clarity's sake, the Court has addressed Plaintiff's argument by evaluating the ALJ's overall RFC assessment, in addition to the ALJ's assessment of three treating source opinions.

**The ALJ's RFC Assessment**

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Regulation ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on the evidence in the case record. *Id*. He must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding

5

and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  Importantly, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

According to Plaintiff, the ALJ's RFC failed to account for his mental limitations and "disproportionately focused on individual findings regarding [Plaintiff's] mood or attention, rather than properly considering the longitudinal record regarding the course of [Plaintiff's] mental illness." (Docket No. 12 at 6).  Defendant responds that "Plaintiff asks the Court to look at the same evidence considered by the ALJ and conclude that it supports more limitations than the ALJ assessed[,]" which it cannot do.  (Docket No. 17 at 9).

The ALJ began the RFC discussion by stating that he considered all of Plaintiff's symptoms, the objective medical evidence, including medical opinions and prior administrative medical findings, in addition to other evidence. (R. 26).  He then summarized Plaintiff's subjective statements, noting that Plaintiff testified to experiencing difficulties with his memory and completing tasks; lacks motivation; and gets distracted when doing chores.  (R. 26–27) (referencing R. 41–66).  Although the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" he concluded that Plaintiff's subjective complaints were not entirely consistent with the medical evidence and other evidence of record.  (R. 27).

Continuing through the evidence, the ALJ thoroughly discussed Plaintiff's medical records.  (R. 27–32).  The ALJ noted various records documenting that Plaintiff was alert and oriented with a normal mood.  (R. 27) (citing R. 1625–32); (R. 28) (citing R. 889–93); (R. 30) (citing R. 1301–08, 1336–41, 1342–44, 1355–64).  He also discussed records indicating Plaintiff

6

was cooperative, interacted appropriately, had intact associations, fair judgment, and adequate insight.  (R. 27) (citing R. 1146–48; 1194–1207; 1208–21); (R. 28) (citing R. 889–93; 965–69; 1072–75; 1143–45); (R. 29) (citing R. 1113–15; 1152–65; 1166–79); (R. 30) (citing R. 1336–41; 1342–44).  Additionally, various records show Plaintiff's memory was normal and that he had no neurological deficits.  (R. 27) (citing R. 1625–32); (R. 28) (citing R. 965–69; 1036–37); (R. 29) (citing R. 1076–82); (R. 30) (citing R. 1355–64; 1625–32).

Conversely, as discussed by the ALJ, Plaintiff's records also demonstrate periods during which Plaintiff's thought processes were disorganized, (R. 27) (citing R. 1194–1221), and his attention and concentration were poor, *id.* (citing R. 1194–1207; 1234–36).  The ALJ then proceeded to discuss the medical opinions and prior administrative medical findings, including those of Evette Budrich, M.D., Stanley Ndungu, LPC, Dawn LaFromboise, M.D., and Stacy Gibbs, M.S., LPC-S, which are discussed in more detail below.  (R. 31–32).  He then briefly discussed a third-party function report completed by Lauryn Freeman, Plaintiff's friend, and found that the extent of the reported limitations was inconsistent with the evidence of record.  (R. 32) (citing R. 277–87).

The ALJ concluded his discussion by acknowledging that Plaintiff will "undoubtedly have some difficulties."  *Id.*  However, the ALJ found that the longitudinal record indicated that Plaintiff "is alert, oriented, cooperative, interacts appropriately, and has normal thought content, adequate insight, intact associations, a normal memory, and an adequate attention span and concentration[.]" *Id.* (citing R. 889–93, 1036–37, 1076–82, 1143–48, 1152–79, 1194–1207, 1355–64).  Thus, "[g]iven the objective medical evidence in the record," the ALJ found that Plaintiff's RFC was reasonable.  (R. 32).

Plaintiff claims that the ALJ erred by not including "any allowances for absences or breaks

7

secondary to [Plaintiff's] mental symptoms[,]" in addition to not including RFC limitations in "managing oneself and adapting to changes, or in interacting with others besides the general public, such as coworkers or supervisors." (Docket No. 12 at 6). However, the ALJ's RFC assessment thoroughly discussed the evidence of record, including medical and nonmedical facts. SSR 96-8p, 1996 WL 374184, at *7. Further, contrary to Plaintiff's claim, the ALJ's assessment was more than a general discussion of the evidence. *Veronica M. H. v. Kijakazi*, Case No. 20-CV-460-JFJ, 2022 WL 709184, at *4 (N.D. Okla. Mar. 9, 2022) (citing *Pedraza v. Berryhill*, Case No. 17-2152-SAC, 2018 WL 6436093, at *2 (D. Kan. Dec. 7, 2018)). Following his detailed summary of the medical evidence, the ALJ related said evidence to his ultimate conclusions regarding Plaintiff's physical and mental capacities. (R. 32).

Furthermore, the ALJ did not ignore contradictory evidence or "pick and choose among medical reports[.]" *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). Rather, he acknowledged records which demonstrated Plaintiff experienced periods during which his thought processes were disorganized, and his attention and concentration were poor and determined that they were not supported by the longitudinal evidence. (R. 27) (citing R. 1194–1221, 1234–36). Plaintiff's disagreement with the ALJ's interpretation of the evidence, without more, does not amount to error. *See Howard*, 379 F.3d at 949; *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Moreover, the ALJ is responsible for determining Plaintiff's RFC and the Court will not reweigh the evidence absent an indication it was improperly considered. *Id.*

The ALJ also accounted for Plaintiff's mental limitations by assigning him an RFC stating that he can understand, remember, and carry out simple tasks and is unable to communicate with or directly interact with the general public. (R. 26). Moreover, Plaintiff points to no medical records showing that the combined effect of his impairments would result in greater functional

limitations than those included in the RFC. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) ("Eggleston argues that the ALJ did not consider the combined effects of his impairments. The ALJ's opinion addresses Eggleston's various impairments, and we find nothing to suggest they were not properly considered.").

### Evaluation of the Treatment Provider Opinions

For claims filed after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Thus, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." *Id.* §§ 404.1520c, 416.920c(a). Instead, the ALJ must articulate how persuasive he finds each medical source's opinion by considering certain factors. *Id.* §§ 404.1520c(b), 416.920c(b). These factors include: (i) supportability; (ii) consistency; (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (iv) specialization; and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). *Id.* §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency and the ALJ must explain how both factors were considered. *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2).[1]

---

[1] Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how he considered the other factors. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Plaintiff, in arguing that the ALJ's RFC assessment is deficient, focuses on the ALJ's evaluation of the opinions of three treatment providers: 1) Mr. Ndungu; 2) Dr. LaFromboise; and 3) Ms. Gibbs. (Docket No. 12 at 5).[2] Defendant asserts that the ALJ thoroughly discussed the aforementioned opinions and relied upon substantial evidence in evaluating them. (Docket No. 17 at 5–7).

### A. Opinion of Stanley Ndungu, LPC

Mr. Ndungu's report, dated March 4, 2022, stated that Plaintiff was "very easily distracted, had poor concentration, had a low frustration tolerance, exhibited poor planning and lack of good management, and a rather dissociated thought pattern or lack of memory[.]" (R. 31) (citing R. 882–83). The ALJ found Mr. Ndungu's opinion to be "partially persuasive to the extent it is in accordance with the above [RFC]." (R. 31). He then referenced records demonstrating Plaintiff's ability to understand, remember, and carry out only simple instructions which supported Mr.

---

[2] The Court notes Plaintiff's observation regarding "whether these longitudinal assessments rendered by [Plaintiff's] treating providers technically qualified as 'medical opinions[.]'" (Docket No. 12 at 9 n.1) (citing 20 C.F.R. § 416.913). The ALJ appears to have treated them as such. (*See* R. 31). Regardless of the standard, the Court concludes the ALJ's evaluation of the opinions was adequate.

10

Ndungu's opinion. *Id.* However, the ALJ found that the extent of the limitations articulated by Mr. Ndungu were inconsistent with the evidence of record. *Id.* The ALJ then cited a record from September 27, 2022, which indicated Plaintiff was "fully oriented, cooperative, interacted appropriately, and had an organized/coherent thought process, intact associations, adequate insight, and an adequate attention span and concentration." *Id.* (citing R. 1166–79).

Plaintiff contends that the ALJ's evaluation of Mr. Ndungu's report as "partially persuasive" was based on a single reference to another record. (Docket No. 12 at 9–10). According to Plaintiff, this constitutes impermissible cherry-picking of the evidence. *Id.* at 10. However, as discussed previously, the ALJ thoroughly discussed the evidence of record before evaluating Mr. Ndungu's report. (*See* R. 26–32). Additionally, the ALJ articulated the factors of supportability and consistency in determining that the report was "partially persuasive." (R. 31). Further, he included the limitation that Plaintiff "can understand, remember, and carry out simple instructions[]" in the RFC. (R. 26). Ultimately, the ALJ found Mr. Ndungu's opinion regarding the extent of Plaintiff's mental limitations to be inconsistent with the longitudinal evidence of record. *Id.*

The Court disagrees with Plaintiff's contention that the ALJ relied solely upon the single example he articulated in his assessment. To the contrary, the ALJ thoroughly discussed the evidence and included both consistency and supportability analyses, allowing the Court to follow the ALJ's reasoning. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on

technical perfection.").

### B. Opinion of Dawn LaFromboise, M.D.

Dr. LaFromboise's report, dated March 14, 2022, "found that [Plaintiff's] memory/organization skills and functionality have declined." (R. 31) (citing R. 884–88). The ALJ determined that the report was unpersuasive, as it was not supported by Dr. LaFromboise's own records from January 2022 stating that Plaintiff was "fully oriented and had intact associations, no identified issues with psychotic thoughts, adequate insight, and an adequate attention span and concentration." *Id.* (citing R. 1208–21). He also determined that the report was inconsistent with an April 2023 exam indicating that Plaintiff was oriented, with a normal attention span and concentration, and a good recent and remote memory. *Id.* (citing R. 1355–64).

Plaintiff again argues that the ALJ's assessment of Dr. LaFromboise's report relied upon cherry-picked records. (Docket No. 12 at 10–11). Additionally, Plaintiff asserts that Dr. LaFromboise's other records were in fact supportive of his report. *Id.* at 11. As with the ALJ's evaluation of Mr. Ndungu's report, his assessment of Dr. LaFromboise's report included supportability and consistency analyses. (R. 31). Further, the ALJ's earlier discussion acknowledged Dr. LaFromboise's other records. (R. 27, 29). On March 24, 2022, Dr. LaFromboise observed that Plaintiff's thought process was disorganized, but that he was cooperative, interacted appropriately, had intact associations, fair judgment, and adequate insight. (R. 27). The ALJ also noted Dr. LaFromboise's records from September 27, 2022, which indicated Plaintiff's "thought process was organized/coherent and his associations were intact[,]" and that he displayed fair judgment and adequate insight, attention span, and concentration. (R. 29).

Once again, the ALJ's discussion allows for adequate court review. *See Keyes-Zachary*, 695 F.3d at 1166. The ALJ did not rearticulate the entirety of Dr. LaFromboise's January 2022

findings when discussing Dr. LaFromboise's report, such as that Plaintiff reported poor sleep and a sad and anxious mood. However, this does not necessitate the conclusion that the ALJ cherry-picked evidence. *See* 20 C.F.R. § 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."). Moreover, records prior to and after Dr. LaFromboise's report support the ALJ's conclusion that, although Plaintiff's thoughts may have been disorganized, Dr. LaFromboise's other observations did not support a finding of a steady decline in memory and functionality. (R. 1208–21; 1166–79); *see Chapo*, 682 F.3d at 1288 (There is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). Moreover, the ALJ included that Plaintiff be limited to tasks of simple instruction in the RFC. (R. 26).

### C. Opinion of Stacy Gibbs, M.S., LPC-S

The ALJ summarized Ms. Gibbs' March 24, 2022, report by stating that Plaintiff's "condition limited his processing, emotional expression, and learning abilities." (R. 31) (citing R. 1234–49). The report also stated that Plaintiff needed "a consistent, daily routine" and that "skills and concepts should be taught to [Plaintiff] in an explicit and rote fashion." *Id.* The ALJ found this report to be "partially persuasive." (R. 32). He determined that Ms. Gibbs' finding that Plaintiff is unable to communicate with or directly interact with the general public to be supported by her notes that Plaintiff "had symptoms of irritability and a history of feeling depressed[.]" *Id.* (citing R. 1234–49). However, the ALJ determined that the extent of Ms. Gibbs' assessed limitations was inconsistent with the evidence, specifically referencing an April 10, 2023, exam which observed that Plaintiff was alert, oriented, and had a normal mood, affect, speech, behavior, judgment, thought content, cognition, and memory. *Id.* (citing R. 1625–32).

Plaintiff contends that the ALJ "relied upon impermissible cherrypicking and failed to justify his conclusion with substantial evidence" in evaluating Ms. Gibbs' report. (Docket No. 12 at 12–13). The ALJ included supportability and consistency analyses in evaluating Ms. Gibbs' report and included RFC limitations consistent with such an evaluation. (R. 26, 32). Additionally, he previously acknowledged Ms. Gibbs' observations that Plaintiff had poor focus and attention. (R. 27) (citing R. 1234–36). However, the ALJ concluded that Ms. Gibbs' recommendations regarding Plaintiff's focusing abilities were not supported by the evidence of record. For example, the same report indicated Plaintiff was fully oriented and appeared appropriately. *Id.* The Court, taking the ALJ's discussion as a whole, is able to adequately review it and determine that the correct legal standards were applied. *See Keyes-Zachary*, 695 F.3d at 1166. Therefore, the Court finds Plaintiff's arguments to be unpersuasive.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 25th day of September, 2024.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT